## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

**Olivia Gibbs,**

> **Plaintiff,**

**v.**                                                    **Case No. 10-2421-JWL**

**ADS Alliance Data Systems, Inc.,**

> **Defendant.**

### <u>MEMORANDUM & ORDER</u>

Plaintiff filed suit against defendant asserting claims of disability discrimination and retaliation in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., and a claim under Kansas law for workers' compensation retaliation. This matter is presently before the court on defendant's motion for summary judgment (doc. 26) on all claims. As will be explained, the motion is denied.

### I.      Facts

The following facts are uncontroverted or related in the light most favorable to plaintiff, the nonmoving party. Defendant ADS Alliance Data Systems, Inc. operates a facility in Lenexa, Kansas which, among other business activities, engages in retail credit card customer service and collections. Plaintiff Olivia Gibbs began working for defendant as a Sales and Service Representative in October 2006. In April 2008, plaintiff was promoted to the position of Recovery Trainee. At all times relevant to this lawsuit, Cheryl Gonzales was plaintiff's immediate supervisor and Susan Brown served as the human resources manager at defendant's

Lenexa facility.  During her employment with defendant, plaintiff also worked for CVS pharmacy.

In June 2008, plaintiff suffered an on-the-job accident at CVS and, as a result of that accident, plaintiff's physician conducted a nerve study and determined that the repetitive nature of plaintiff's work  at defendant caused her to develop carpal tunnel syndrome.  In August 2008, plaintiff filed a claim for workers' compensation benefits with the State of Kansas.  Plaintiff underwent carpal tunnel surgery on her right wrist on December 3, 2008 and she returned to work on Friday, December 12, 2008 with restrictions–namely, she was permitted to work only with her left hand.  Although defendant apparently placed plaintiff in a light duty assignment that it believed would not require the use of her right hand, plaintiff's evidence reflects that her production numbers were not reduced in any respect such that she was forced to use her right hand to "keep up" and that she could not perform certain key strokes with only one hand.  On December 13, 2008, the day after she returned to work, plaintiff wrote a letter to Susan Brown requesting a different light duty assignment that would permit plaintiff to use only her left hand. During this same time, plaintiff asked permission for a schedule change so that she could take the bus to and from work as opposed to driving herself to work.

While the record does not reflect whether plaintiff's requests were granted, the record does contain evidence, viewed in the light most favorable to plaintiff, that defendant's management employees, particularly Susan Brown, were frustrated with plaintiff's condition and her resulting requests for accommodation. Plaintiff testified that on one occasion, she called Ms. Brown to advise her that she was going to be delayed in connection with a doctor's appointment

2

because of the bus route and schedule.  According to plaintiff, Ms. Brown "screamed" at her on the phone and told her that she would not have any more phone discussions with plaintiff and that every in-person conversation would be documented.  In December 2009, plaintiff notified Ms. Brown and Ms. Gonzales that she would need to have numerous surgeries in 2009–including carpal tunnel surgery on her left hand.[1]  Plaintiff testified that, around that same time, Ms. Gonzales told her that she and Ms. Brown had reviewed plaintiff's personnel file and determined that "they were losing money" on her.

On January 8, 2009, plaintiff's physician released her to full duty with no work restrictions.  The following day, Susan Brown allegedly observed plaintiff soliciting employees to buy Avon products.  According to Ms. Brown, she confirmed that plaintiff was on the clock at the time she was allegedly soliciting employees and then made the decision to terminate plaintiff's employment for violating defendant's Solicitation and Distribution Policy. That policy allows certain types of solicitation during non-work time and prohibits other types of solicitation entirely.  The written policy states that an employee who violates the policy "may be subject to counseling regarding your behavior."  Plaintiff's employment, then, was terminated on January 10, 2009.  Ms. Gonzales was not involved in the decision to terminate plaintiff's employment.

Additional facts will be related, as necessary, in connection with the court's analysis of defendant's motion and plaintiff's particular claims.

---

[1]The other surgeries were unrelated to plaintiff's carpal tunnel condition.

## II.     Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In applying this standard, the court views the evidence and make inferences in the light most favorable to the non-movant.  *Kerber v. Qwest Group Life Ins. Plan*, ___ F.3d ___, 2011 WL 2151201, at *7 (10th Cir. June 2, 2011).  A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party" on the issue.  *Id*. (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)).  Although the court views the evidence and draws reasonable inferences therefrom in the light most favorable to the nonmoving party, "the nonmoving party must present more than a scintilla of evidence in favor of his position."  *Id*.  (quoting *Ford v. Pryor*, 552 F.3d 1174, 1177–78 (10th Cir. 2008)).

## III.    ADA Claims

In the pretrial order, plaintiff sets forth two claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq.  Her first claim is that defendant terminated plaintiff's employment on the basis of her disability, her bilateral carpal tunnel condition.  Her second claim is that defendant terminated plaintiff's employment in retaliation for plaintiff's engaging in protected activity under the ADA.  Defendant moves for summary judgment on both claims.[2]

---

[2]The "Nature of the Case" portion of the pretrial order includes a reference to "claims involving . . . hostile work environment on the basis of disability."  However, the more specific "Theories of Recovery" portion of the pretrial order is limited to only three claims–the discriminatory discharge and retaliation claims under the ADA and the workers'

As will be explained, the motion is denied.

A.      *Discrimination Claim*

The analytical framework articulated in *McDonnell Douglas* controls the court's analysis of plaintiff's disability discrimination claim because she seeks to proceed to trial exclusively on the basis of circumstantial evidence of discrimination. *See Johnson v. Weld County, Colo.*, 594 F.3d 1202, 1217 (10th Cir. 2010). Accordingly, the plaintiff must first establish a prima facie case of discrimination, showing a genuine issue of material fact exists on each of three points: "(1) she is a disabled person as defined by the ADA; (2) she is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) her employer discriminated against her because of her disability." *Id.* If the plaintiff establishes a prima facie case, "the burden shifts to the defendant to offer a legitimate nondiscriminatory reason for its employment decision. Should the defendant articulate a nondiscriminatory reason, the burden shifts back to plaintiff to show a genuine issue of material fact as to whether defendant's reason for the discharge is pretextual." *Id.*

With respect to the first prong of plaintiff's prima facie case, defendant begins by conceding, as it must, that the ADA Amendments Act of 2008 (ADAAA) has "lowered the bar" on the disability inquiry. Indeed, the ADAAA was passed in response to decisions by the U.S.

---

compensation retaliation claim. Moreover, neither party mentions any hostile work environment claim in the summary judgment submissions. The court, then, assumes that any hostile work environment theory has been abandoned by plaintiff.

Supreme Court that, according to Congress, had "created an inappropriately high level of limitation necessary to obtain coverage under the ADA," and was intended to reinstate "a broad scope of protection . . . available under the ADA." *See Norton v. Assisted Living Concepts, Inc.*, ___ F. Supp. 2d ___, 2011 WL 1832952, at *7 (E.D. Tex. May 13, 2011) (citations omitted). While an ADA plaintiff must still show that he or she has a physical or mental impairment that substantially limits a major life activity, 42 U.S.C. § 12102(1)(A), the ADAAA has "significantly expanded" the terms within that definition in favor of broad coverage. *See Norton*, ___ F. Supp. 2d at ____, 2011 WL 1832952, at *7.  In expanding the definition of disability, Congress intended to convey "that the question of whether an individual's impairment is a disability under the ADA should not demand extensive analysis" and that the "primary object of attention in cases brought under the ADA should be whether entities covered under the ADA have complied with their obligations." *See id.* (citations omitted).  Consistent with this purpose, the implementing regulations state that the terms "substantially limiting" and "major" are not intended to be "demanding" standards.  29 C.F.R. § 1630.2(i)(2) & (j)(1)(i) (2011).

Recognizing, then, that the court must consider the evidence of plaintiff's alleged disability through the lens of the less demanding standard of disability set forth in the ADAAA, defendant's argument in support of its motion for summary judgment on this issue is decidedly brief–it asserts only that plaintiff has the burden to prove that her impairment substantially limits a major life activity despite the broader reach of the ADAAA.  After examining the evidence in the record bearing on this issue (certainly there is some evidence that plaintiff's condition affected her ability to perform manual tasks), and keeping in mind that this inquiry is not meant

6

to be "extensive" or demanding, the court concludes that genuine issues of material fact exist as to whether plaintiff's carpal tunnel syndrome constitutes a disability within the meaning of the ADA.

Defendant next contends that plaintiff cannot establish the third element of her prima facie case. According to defendant, the termination of plaintiff's employment was unrelated to her carpal tunnel condition. In support of this contention, defendant urges that plaintiff was terminated for violating the company's Solicitation and Distribution policy. The court, of course, cannot consider this evidence at the prima facie stage. *See, e.g., EEOC v. Horizon/CMS Healthcare Corp*., 220 F.3d 1184, 1192-94 (10th Cir. 2000) (requiring plaintiff to disprove defendant's proffered reason for employment decision to establish prima facie case would inappropriately short circuit *McDonnell Douglas* analysis and frustrate plaintiff's ability to establish pretext). In any event, as explained below in connection with the pretext analysis, plaintiff has come forward with evidence that her employment was terminated under circumstances giving rise to an inference of discrimination. *See Butler v. City of Prairie Village*, 172 F.3d 736, 748-49 (10th Cir. 1999) (to establish the third element of a prima facie case of disability discrimination, the plaintiff must show that she was terminated because of her disability, or that the employer terminated the plaintiff "under circumstances which give rise to an inference that the termination was based on her disability).

Consistent with the *McDonnell Douglas* analysis, defendant next contends that plaintiff cannot establish that defendant's proffered reason for terminating plaintiff's employment is pretextual. According to Ms. Brown, she observed plaintiff, on January 9, 2009, approaching

and soliciting employees to buy Avon products.  Ms. Brown avers that she then contacted plaintiff's supervisor, Ms. Gonzalez, to "inquire as to whether Ms. Gibbs was on the clock or on a break or lunch."  According to Ms. Brown, Ms. Gonzalez told her that "Ms. Gibbs was supposed to be working and was not on break or lunch."  Ms. Brown, then, decided to terminate plaintiff's employment for violating defendant's Solicitation and Distribution policy.  According to plaintiff's testimony, at the time she allegedly tried to sell Avon products to a coworker, she was simply standing by the desk of a coworker, a woman named Rebekah Bishop with whom plaintiff was close friends.  Plaintiff testified that she had clocked out of work for the day, was already wearing her coat and hat and had her Avon bag over her shoulder ready to leave for the day.  She testified that she and Ms. Bishop were not discussing Avon products in any event.  Ms. Bishop testified that plaintiff has never sold or offered to sell Avon products to her.

While defendant has certainly satisfied its burden of articulating a legitimate nondiscriminatory reason for plaintiff's discharge, the court concludes that plaintiff's evidence is sufficient to cast doubt on Ms. Brown's testimony and to withstand summary judgment on this claim. While defendant urges that plaintiff's "subjective evaluation" of the situation is irrelevant and that the court should focus only on Ms. Brown's "sincere beliefs," Ms. Brown's testimony provides no context from which the court might ascertain the sincerity of her belief that plaintiff was soliciting coworkers during working time. Ms. Brown does not explain why she concluded that plaintiff was selling Avon products to a coworker or where and when she observed plaintiff. Rather, her testimony on this subject is conclusory–she avers only that she observed plaintiff soliciting coworkers to buy Avon products. The court, then, is left with plaintiff's description

8

of the events.  If, as described by plaintiff, Ms. Brown simply observed plaintiff talking to Ms. Bishop at Ms. Bishop's desk, wearing her coat and hat with her Avon bag over her shoulder, then a jury could reasonably conclude that Ms. Brown did not sincerely believe that plaintiff was violating the solicitation policy or that Ms. Brown's conclusion in that respect was not reasonable in light of the circumstances.  In these circumstances, plaintiff's testimony that she was, in fact, not engaged in solicitation, corroborated by Ms. Bishop, calls into question Ms. Brown's testimony on that subject.  An application of the "honest belief" rule, then, is inappropriate. *See Orr v. City of Albuquerque*, 531 F.3d 1210, 1217-18 (10th Cir. 2008) (fact question existed as to whether personnel director's decision was based on honest belief or intentional discrimination).

Other pieces of evidence further support the court's conclusion that plaintiff has satisfied her pretext burden. Defendant's solicitation policy, on its face, does not contemplate termination for a violation of the policy; it states that an employee who violates the policy "may" be subject to counseling.[3]  Ms. Brown's decision to terminate plaintiff's employment rather than counsel plaintiff as per the written policy further calls into doubt Ms. Brown's decision, particularly in the absence of evidence that plaintiff had ever previously been counseled for solicitation or violating any other work rule. *See Timmerman v. U.S. Bank, N.A.*, 483 F.3d 1106, 1119 (10th

---

[3]Defendant contends that its termination policy provides for immediate discharge of any employee engaged in solicitation during work time.  The termination policy, however, is at best ambiguous on this subject and appears to indicate that an employee may be terminated for solicitation only when the particular type of solicitation is entirely prohibited by the solicitation policy such as selling raffle tickets, seeking donations, and selling club memberships.

Cir. 2007) ("It is well-established that pretext can be shown by 'evidence that the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances.'").  Finally, plaintiff testified in her deposition that her supervisor, Cheryl Gonzales, told her that she and Ms. Brown had "reviewed" plaintiff's personnel file and "that they were losing money on me."[4]  According to plaintiff's evidence, this statement was made in December 2009 in connection with plaintiff advising her supervisor that she needed to have additional surgeries after the first of the year–one related to her carpal tunnel condition. While it is unclear from the record whether this alleged statement was intended to refer to plaintiff's condition (and the related surgeries, work restrictions and time away from work), the court cannot conclude as a matter of law that the statement is not linked to plaintiff's condition. In short, plaintiff has come forward with evidence sufficient to call into question defendant's proffered reason for plaintiff's discharge.  Summary judgment on this claim, then, is denied.

B.   *Retaliation Claim*

The court turns, then, to plaintiff's second ADA claim, that defendant terminated plaintiff's employment in retaliation for plaintiff's engaging in protected activity under the ADA. To establish a prima facie case of retaliation, plaintiff must show that she engaged in protected opposition to discrimination; that defendant took an adverse employment action against her

---

[4]Defendant contends that plaintiff's testimony on this subject constitutes inadmissible hearsay.  In fact, the statements are nonhearsay pursuant to Federal Rule of Evidence 801(d)(2)(D) as admissions of party opponents.

which a reasonable person would have found materially adverse; and that a causal connection exists between the protected activity and the materially adverse action. *See Hennagir v. Utah Dept. of Corrections*, 587 F.3d 1255, 1265 (10th Cir. 2009).

In its motion for summary judgment, defendant first contends that plaintiff cannot establish a causal connection between her protected activity and her termination because there is no evidence showing that Ms. Brown, at the time she terminated plaintiff's employment, had knowledge that plaintiff had engaged in protected activity. *See id.* at 1267 ("To establish causation in an ADA retaliation action . . . a plaintiff must also demonstrate that the individual who engaged in a materially adverse action knew about the protected activity."). Defendant has not shown that it is entitled to summary judgment on this basis. While it is undisputed that Ms. Brown did not learn that plaintiff had formally complained about disability discrimination until after plaintiff's January 10, 2009 termination (when Ms. Brown received plaintiff's July 2009 EEOC charge), it is nonetheless clear that Ms. Brown, at the time she terminated plaintiff's employment, had knowledge of Ms. Brown's December 13, 2008 request for a light duty assignment and her request for a schedule change. The Tenth Circuit has recognized that requests for reasonable accommodation constitute protected activity under the ADA. *See Jones v. United Parcel Serv., Inc*., 502 F.3d 1176, 1194 (10th Cir. 2007). Because defendant has not raised the issue, the court need not address at this juncture whether Ms. Brown's requests were reasonable. Simply put, defendant has not shown the absence of a genuine issue of material fact as to whether Ms. Brown had knowledge of plaintiff's protected activity and defendant does not otherwise challenge plaintiff's prima facie case of retaliation.

11

As noted earlier, plaintiff has satisfied its burden of articulating a legitimate, nonretaliatory reason for terminating plaintiff's employment–plaintiff's alleged violation of defendant's solicitation policy. *See Hennagir*, 587 F.3d at 1265 (utilizing *McDonnell Douglas* burden-shifting analysis in context of ADA retaliation claim). For largely the same reasons described in connection with plaintiff's discrimination claim, plaintiff has satisfied her pretext burden. In the face of Ms. Brown's conclusory testimony about plaintiff's solicitation activities, plaintiff has come forward with evidence from which a jury could conclude that Ms. Brown's asserted belief that plaintiff was violating the policy was either dishonest or irrational. Plaintiff has also come forward with evidence that Ms. Brown acted contrary to defendant's written policy concerning appropriate discipline for employees who violate the solicitation policy. Moreover, with particular application in the retaliation context, the timing of the decision to terminate plaintiff's employment–just 4 weeks after plaintiff requested an accommodation based on her condition–is sufficient to create genuine issues of material fact as to whether defendant's proffered reason for terminating plaintiff's employment was pretextual. *Annett v. University of Kansas*, 371 F.3d 1233, 1240 (10th Cir. 2004) (close temporal proximity is a factor in showing pretext). Summary judgment on this claim, then, is denied.

## IV.     Workers' Compensation Retaliation

Kansas courts also apply the *McDonnell Douglas* burden-shifting framework to claims of employment discrimination, including claims of retaliatory discharge for filing a workers' compensation claim. *Proctor v. United Parcel Serv.*, 502 F.3d 1200, 1211 (10th Cir. 2007)

(citations omitted).  Thus, plaintiff must first establish a prima facie case of retaliation.  *Id.* at 1212.  If she meets this burden, defendant must come forward with a legitimate, nonretaliatory reason for the discharge.  *Id.*  Plaintiff then has the burden of showing "by a preponderance of the evidence" that this legitimate reason is a pretext for retaliation in violation of state law.  *Id.*

To establish a prima facie case for retaliation under Kansas law, plaintiff must establish that (1) she filed a claim for workers' compensation benefits or sustained an injury for which she might assert a future claim for such benefits; (2) defendant had knowledge of plaintiff's workers' compensation claim or injury; (3) defendant terminated plaintiff's employment; and (4) a causal connection existed between the protected activity or injury and the termination.  *Id.*  In its motion for summary judgment, defendant concedes that plaintiff has satisfied the first three elements of her prima facie case.  Defendant contends, however, that plaintiff cannot establish the fourth element regarding causation.  According to defendant, there is no evidence in the record that any management employee bore any retaliatory animus toward plaintiff as a result of her workers' compensation claim.

The court begins by recognizing that a plaintiff's prima facie burden in workers' compensation retaliation cases is not onerous.  *See Rebarchek v. Farmers Co-op. Elevator*, 272 Kan. 546, 557 (2001) (claimant's prima facie burden in workers' compensation retaliation case is not onerous).  Bearing that in mind, the court concludes that plaintiff has satisfied her burden here.  As described earlier in connection with plaintiff's discrimination claim, plaintiff testified in her deposition that Ms. Gonzales told her that she and Ms. Brown had "reviewed" plaintiff's personnel file and "that they were losing money on me."  Viewing the evidence in the light most

13

favorable to plaintiff, the statement was made in December 2009 in connection with plaintiff advising her supervisor that she needed to have additional surgeries after the first of the year–one related to her workers' compensation injury. While it is unclear from the record whether this alleged statement was intended to refer to plaintiff's workers' compensation injury (and the related surgeries, work restrictions and time away from work), the court cannot conclude as a matter of law that the statement is not linked to plaintiff's workers' compensation claim and/or injury. In sum, the court concludes that plaintiff has come forward with evidence sufficient to satisfy her prima facie case.

As noted above, defendant has asserted a facially legitimate, nonretaliatory reason for plaintiff's discharge–her violation of defendant's solicitation policy. Nonetheless, as also described above, plaintiff has come forward with sufficient evidence of pretext to survive summary judgment on this claim. There is evidence from which a jury could reasonably conclude that Ms. Brown did not honestly believe that plaintiff was in violation of the solicitation policy at the time she terminated plaintiff and that Ms. Brown acted contrary to defendant's own policy prescribing the appropriate disciplinary action to be taken under the circumstances. This evidence, taken together with the statement–allegedly made only a few weeks before plaintiff's termination–that defendant was "losing money" on plaintiff, is sufficient for plaintiff to present this claim to a jury. Summary judgment is denied.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion for summary judgment (doc. 26) is denied.

14

**IT IS SO ORDERED.**


Dated this 28th day of July, 2011, at Kansas City, Kansas.


s/ John W. Lungstrum
John W. Lungstrum
United States District Judge